*Radcliff, J.
The covenant on which this action is founded, is expressed in terms so obscure, that without an attentive examination, it may be difficult to- discover the real intent, of the parties. This embarrassment is increased by - the circumstance that the covenant,relates to a contract made in Massachusetts, and subject to the laws of that state. By . the recital in the deed containing the covenant; it appears that the plaintiff purchased the note from the defendant, for a valuable consideration, ' and if We were. to' collect the terms of the purchase from the recital only, it Would seem that the plaintiff, took the nóte wholly at his own risk, as it respected the- ability of Baker and Hooker. In this limited-view of -the' contract. I admit it would be incumbent on the *77 plaintiff to show that he had attempted to recover against both, and had failed. Such attempts against both, would be conditions precedent to his right of recovery in this action, and ought to be strictly performed. But though the recital might justify this construction, and though it be also true, that agreements thus recited in themselves often amount to distinct covenants, and are considered as such; yet when they are merely introductory to subsequent stipulations in in the same deed, and relative to the same matter, they are dependent on, and may be enlarged, qualified, or restrained by the subsequent stipulations. I think that the subsequent covenants between the parties in the present case have this effect. They explain and modify the risk undertaken by the plaintiff, and show it to be different in its operation from the unqualified sense in which it is expressed in the recital.
The covenant on the part of the defendant is, that he will pay to the plaintiff 2000 dollars, when, &c., in case the plaintiff shall take every legal step to prosecute to effect the said Baker and Hooker; and the covenant states the manner in which he is to prosecute, and the events upon which the defendant was to be liable, that is to say, “ if the plaintiff, nor no one in his name, or in the name of Hooker, could recover j udgment against Baker on the note, or against Hooker, in case the said Hooker had, at *the time of the cove- [*68] nant, discharged the said note, or should discharge the same previous to the bringing a suit against Baker.” The parties contemplated a suit against Baker only in case the note remained due and undischarged, for this is not only the sense of the covenant, but it is admitted by the pleadings that in such case no suit could be maintained against Hooker, he not having endorsed the note, nor being liable but in consequence of a' discharge by him. It cannot, therefore, be supposed that the plaintiff in that case was bound to sue both Hooker and Baker, before he could resort to the defendant. So, also, if the note had been discharged by Hooker at the time of the covenant, or at any time before a suit was brought against Baker, it cannot be imagined, that either. *78 the plaintiff or defendant contemplated that in such case, an experiment to recover a judgment against Baker was still to be made. It would not be requisite by the terms of the covenant, and Would in itself-be nugatory. The true construction of the covenant, therefore, appears to be, that if the note was not discharged, a suit was to be brought, and a judgment endeavored to be recovered against Baker ; and if before such suit the note was discharged by Hooker, an attempt should then be made to recover a judgment against Hooker, and in either case, if a judgment was recovered, the plaintiff took upon himself the risk of the solvency of Hooker and Baker ; but if in the one case, no judgment could be recovered against Baker, or in the other against Hooker, the defendant was then to pay the money stipulated by his covenant In this manner, I apprehend, and in no other, did the plaintiff take upon himself the risk as to the ability of Baker and Hooker respectively. It appears the note was not discharged by Hooker, and the plaintiff, therefore commenced his suit against Baker, and it is not denied that he has taken every legal.step to recover a judgment against him; but it is insisted, that after the dismissal of the suit against Baker, in consequence of the act of Hooker, the plaintiff ought [*69] to have instituted another suit against *Hooker, and attempted to recover against him, which, as is alleged in the defendant’s plea and is admitted by the demurrer, he might have done by the law of Massachusetts. But by the terms of the covenant, a suit against Hooker was not necessary, for it requires the plaintiff to prosecute Hboker only in case he had discharged the note before the date of the covenant, or before the commencement of a suit against ' Baker, and not after.
It has been said, that this would be a literal construction, and against the spirit of the contract. AH'contracts are, no . doubt, entitled to a fair and liberal interpretation, in order to effectuate their intent;. but that intent ought to be sufficiently certain and obvious to justify a departure from terms which are express and unequivocal.
In the present case, the parties had in view the law of *79 Massachusetts; the plaintiff undertook to prosecute at his own expense, either Baker or Hooker in that state, as the case might require, and he was content with the liability of either, but. he did not undertake to prosecute them successively,' and expose himself to the costs and delay of two suits. This expense and delay may have induced the precise stipulation in question, which appears to he the effect of deliberate caution and not of accident. Other reasons for this stipulation may also have existed," arising from the law of Massachusetts, or from circumstances not officially known to the court, and I think it would be more hazardous than liberal to say, that no sufficient reasons existed to support the precise terms of the contract. We must consider them as understood by the parties, and deliberately made. As to the point under consideration, it seems to be expressed with care and precision, and we cannot with safety apply to it a meaning wholly different from what the terms import. If the intent were doubtful, the rule of construction would operate against the covenantor; (a) but the sense of the parties, in *80 this instance is unequivocally expressed, and express covenants require a strict and absolute performance. (2:Str. 763.)
If they impose a hardship, it is to be ascribed to the [*70] indiscretion *of the party. The court cannot alter or " amend the contract.
In the ease of a bond conditioned to do a thing which is impossible at the time of executing it, the court cannot release the obligor. The bond is deemed to be single1 and valid, and the obligor is bound to pay the money.(a) (5 Co. 22, b. Laughter's case.) It requires a much less' rigorous construction to charge the defendant on this covenant. The plaintiff has also averred, in his declaration, that he had no legal remedy to sue upon the note in his own name either against Baker or Booker. This averment so far as relates to another prosecution against Hooker, for the reasons already given, I consider as mere surplusage.** After the.suit against Baker it was unnecessary for the plaintiff to say that he could not recover against Hooker.
Upon the whole, I am of opinion, that'the objection' to the declaration is not well taken, and that the second plea, as well as the first,-is insufficient, and that judgment ought to be rendered for the plaintiff.
Benson, J. and Lewis, J. were of the same opinion. '
Kent, J.
By the covenant it appears that the plaintiff was to do a previous act to entitle him to maintain a suit on the covenant; and this previous act,, like all other stipulations in covenants, must be done fairly and faithfully, according to the spirit and intention of the agreement.
Itm'ay be proper to observe as a' rule in the construction of covenants, that they are to be performed according to their spirit, rather than their letter, “ ut, res magis valeat quam per eat.” The beneficial end which the parties had in view, *81 is to be primarily regarded and enforced.(a) Thus, where an obligee engaged to deliver up his obligation to the obligor by such a day, and he in the meantime put it in suit, and re- ■ covered» upon it, and then delivered it, this, although a compliance with the words of the agreement, was held no performance of the intent. (Cro. Eliz. 7.) So, where A. covenanted with B. that he should enjoy a term for six years,, discharged from tithes, and a suit was ^brought [*71] after the expiration of the term, for the intermediate tithes, it was held that’B. was as much prejudiced by a suit after the term, as he would have been before, and that the intent of the covenant was, that he should be freed from suit and payment, and that the covenant was broken. (Cro. Eliz. 916.) By the same just and liberal rule of interpretation it is declared, that if one covenant to deliver the grains made in a brew-house, and in the mean time he mix them with hops so as to render them unpalatable to cattle, or engage to deliver so many yards of cloth, and he cuts it in pieces and then delivers it, (T. Raym. 464,) or if he covenants to leave the timber on thé land, at the expiration of a lease, and he cuts - it down and so leaves it, these and numerous other instances of the like kind to be met with in the books, (see 1 Sid. 48, 151,) are all adjudged to be breaches of the covenant, because the law regards not a literal,, but a real and faithful performance of contracts, according to the intent of the parties. These principles ought to be kept steadily in view, as * having an application to the present case. -
It is pretty obvious, that the defendant did not intend to pay the 2000 dollars, until the plaintiff had faithfully tried, and tried in vain to recover the amount of the note from Baker and from Hooker. The note was sold to the plaintiff to be collected at his own risk, so far as respected the ability *82 of Baker and Hooker ; and it was a condition precedent to th'e payment of the money by the defendant, that the plaintiff should take all and every legal step as the law directed, to prosecute to effect Baker and Hooker. He did take those ' steps to prosecute Baker, but not against Hooker, although the latter bcame liable to him for releasing the suit he had instituted in his name against Baker. Here then appears a palpable failure on the part of the plaintiff, to do an act which was necessary ,to be done, to entitle him to his action against the defendant. I mean the failure to take the steps by law directed to prosecute to effect Hooker as well as - Baker. It may, however, be observed, that the case in which
Hooker is to be prosecuted, is afterwards particularly [*722 stated in the covenant; *and that Hooker was only to be prosecuted if he had, at the date of the covenant, or should previous to the suit against'Baker, discharge the note; and that never having discharged the note, the plaintiff was under'no obligation, by his covenant to prosecute him. To this I answer, that although this be the letter, it cannot be the intent of the agreement. The agreement, in the first, instance, provides generally,, that the plaintiff shall prosecute to effect both Hooker and Baker, and it then proceeds to specify théinstance in which Hooker is to be prosecuted, to wit, if he ' had then already,, or should, previous to a suit against Baker,, discharge the note. But the rational meaning1 of the covenant, deficient as it may be in perspicuity and precision, cannot be otherwise than this, that the plaintiff should first prosecute . Baker, and" if Hooker should prevent him from recovering against Baker, that he should then prosecute Hooker.
The defendant seems to have contemplated but a single, case in* which Hooker could prevent a recovery, and that case he has specified, which was the discharge of the note Whereas an interference by Hooker in discharging or releasing the suit, was an equal'impediment to a recovery, and equally exposed Hooker to a prosecution^ The plaintiff was to take every legal step to obtain a recovery both against Baker and Hooker, but he omitted to take any step against Hooker, and now alleges as a sufficient excuse, that Hooker did not prevent *83 a recovery against Baker, in the manner mentioned and .ex-, pressly provided for in the covenant; that it is true he prevented a recovery by discharging the suit, but he did not prevent a recovery by discharging the note, and that he must prevent a recovery in the latter mode, and not in the former, otherwise he was not to be prosecuted.
I cannot approve of this subtle distinction, calculated, as it appears to me, to elude the end and design of the covenant; for I cannot perceive any possible inducement, on the part of .the defendant to stipulate that the plaintiff should previously prosecute Hooker, if he prevented a recovery against Baker by discharging the. note, which would not *equally be felt, and equally operate, if Hooker [*73] prevented a recovery against Baker by discharging the suit. And for the plaintiff to pretend that he was bound to prosecute Hooker in the one case, because it was expressly mentioned in the covenant, and that he was not bound in the other case, because it happened to be omitted, although precisely within the same reason, is for him to construe the article by its letter, and to disregard its spirit. It is the same, according to the cases mentioned, as to deliver up the obligation by the day, but in the mean time to prosecute and recover on it; or to deliver the cloth, but after it is cut to pieces; or to leave the timber on the land, but to. leave it prostrate. I am accordingly of opinion, that the plaintiff has not shown, in his declaration, the requisite previous performance on his part, and that judgment ought to be rendered for the defendant.
Lansing, Oh. J. declared himself of the same opinion,
Judgment for the plaintiff.

 “ Verba chartarum, fortius accipiuntur contra proferentem,.’’ Co. Litt. 36.(a) Plowden, 287. 2 Bac. Ab. Covenant, F. 356. This rule by the common law, generally applies to all covenants and other contracts, Love v. Pares, 13 East, 86. Rubery v. Gervoise) 1 T. R. 234, Randel v. Ches. & Del. Canal Co., 1 Harrington, 154, 233. Fowle v. Welsh, 1 Barn. & Cress. 35. Adams v. Frothinghams 3 Mass. R. 352. Watson v. Boylston, 5 id. 411. Shrewsbury v. Gould, 2 Barn. & Ald., 494. Worthington v. Hilyer, 4 Mass. 196, 205; and to pleadings, Ambiguum placitum interpreiari debet contra proferentem, Co. Litt. 303 ;(6) Hobart, 242 ; but acts of parliament are not, in general, within the reason of the rule, because they are not the words of parties, but of the legislature ; neither does this rule apply to wills. 2 Dwarris on Stats. 688; Ld. Bacon’s Works, vol. 4, .p. .30. Where, however, an act is passed for the benefit of a canal, railway or other company, any ambiguity must operate in favor of the public ; the company being entitled to claim nothing not clearly given by the act. Per Tenterden, Ch. X, Stourbridge Canal Co. v. Wheeley, 2 Barn. & Adolph. 793. Priestly v. Foulds, 2 Soott N. R. 288; per Coltman, J; and see Bro. Max. 257, n. (r) The rule in question being one of some strictness and rigor, is never to be relied upon, but when all other rules, of exposition fail; Bac. Max. reg. 3 ; 2* Black. Comm. 380 ; and, it is not to be applied where it would work wrong to a third per. son, it being a maxim that constructio legis non fdcit injuriam• Co. Litt. 183,(A). Per Bayley, J, Smith v. Doe, 2 B. & B. 551. See a full conside *80 ration of this maxim with illustrations, drawn from many cases in the Selection of Legal Maxims, by Mr. Broom, London, 1845, pp. 254, 260

 So, where one covenants to do a certain act, and before the time of performance disables himself -from so doing, he is thereupon liable for a breach of the covenant. Hopkins v. Young, 11 Mass. 302. Heard v. Bowers, 23 Pick; 455.

 Roberts v. Roberts, 22 Wend. 140. Quackenboss v. Lansing, 6 Johns. R. 49. Marvin v. Stone, 2 Cowen, 781. Bull v. Follett, 5 id. 170. White v. De Villiers, infra, 173. Watchman v. Crook, 5 Gill & Johns. R. 239. Howland v. Leach, 11 Pick. 150. Atwood v. Cobb, 16 id. 227. Jumner v. Williams, 8 Russ. 162. Upon the maxim, Verba intentionis el non contra debent inserviri. See Bro. Max. 238, 249 ; where the authorities are given at large.